PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO. 5:21-CR-148 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| PATRICK L. BRADLEY, | ) | |
| | ) | **ORDER** |
| Defendant. | ) | [Resolving ECF No. 109] |

Pending before the Court is Defendant's Motion for New Trial and to Reopen Suppression Hearing (ECF No. 109). The Government filed a response in opposition (ECF No. 114). Defendant replied (ECF No. 115). The Court held oral argument on the motion ("Hearing"). *See* Minutes of Proceeding on 4/18/24. For the reasons stated below, Defendant's motion is denied.

## I. Background

On August 31, 2022, Defendant filed a second motion to suppress. *See* ECF No. 36. The Government responded.[1] *See* ECF No. 45. The Court denied Defendant's motion to suppress, holding that probable cause existed to issue a valid search warrant. ECF No. 50 at PageID #: 365. Defendant filed a Motion for Reconsideration on the Motion to Suppress (ECF No. 55), and the Government responded (ECF No. 56). The Court denied the motion for reconsideration

[1] Defendant first filed a motion to suppress on February 10, 2022. *See* ECF No. 26. After Defendant lost retained counsel and was appointed counsel, the first motion to suppress was stricken. *See* Non-Document Order on 9/9/2022.

(ECF No. 55) and, subsequently modified its Order denying Defendant's motion to suppress (ECF No. 58).

On November 17, 2023, a jury found Defendant guilty of Possession with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii) (Count 1 of the Indictment), Possession with Intent to Distribute a Mixture and Substance Containing a Detectable Amount of Cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count 2 of the Indictment), and Possession with Intent to Distribute MDMA, in violation of 21 U.S.C. § 841(a)(1) (Count 3 of the Indictment). ECF No. 97.

## II. Standard of Review

Upon a motion by a defendant, the Court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. "A trial court should only grant the motion when the verdict is against the 'manifest weight' of the evidence." *United States v. Bowens*, 938 F.3d 790, 796 (6th Cir. 2019) (quoting *United States v. Mallory*, 902 F.3d 584, 596 (6th Cir. 2018)). "Such a motion calls on the trial judge to take on the role of a thirteenth juror, weighing evidence and making credibility determinations firsthand to ensure there is not a miscarriage of justice." *Mallory*, 902 F.3d at 596.

A court may reopen a suppression hearing, but it should be "extremely reluctant" to do so. *United States v. Baker*, 562 F. App'x 447, 450 (6th Cir. 2014). The decision to reopen a suppression hearing is left to the sound discretion of the court. *United States v. White*, 455 Fed. App'x 647, 650 (2012).

## III. Discussion

Post-trial, Defendant moved for a new trial and to reopen his suppression hearing, alleging a *Brady* violation resulting from information allegedly suppressed from a surveillance log. ECF No. 109 at PageID #: 1813.

Prior to the Suppression Hearing, the Government produced discovery that included a log maintained by agents conducting surveillance of Defendant. Both sides agree that the log shows a gap in the times during which Defendant was visually observed by the agents conducting surveillance. It is also a matter of record that the affiant, Agent Blanc, testified as a government witness at the suppression hearing (ECF No. 49 at PageID #: 254), was cross examined by Defense counsel at the suppression hearing (ECF No. 49 at PageID #: 259), and testified as a defense witness at trial (ECF No. 106 at PageID #: 1506). The agent who created the log, Task Force Officer ("TFO") Blohm, testified at trial as a government witness (ECF No. 105 at PageID #: 1169) and was cross examined by Defendant's current counsel (ECF No. 105 at PageID #: 1209).

During the Hearing, Defendant conceded that before the suppression hearing he received a surveillance log containing the gap in time. ECF No. 119 at PageID #: 1909, line 7. Now Defendant argues, however, that alleged impeachment testimony elicited at trial from TFO Blohm—that officers lost surveillance of Defendant for a period of time—should have been disclosed prior to the suppression hearing.[2] Defendant explained that "there was nothing in the surveillance log that recorded when Mr. Bradly arrived back at 6:45. But the fact that

[2] Defendant argues, "If I had known prior to the suppression hearing… the trial testimony of Agent Blohm [which] said surveillance was lost on [Defendant] around 6:30 p.m." ECF No. 119 at PageID #: 1894, 1896, line 21, lines 4-6.

surveillance [was] lost … or may have been lost, was a fact that came out during trial." ECF No. 119 at PageID #: 1911, lines 4-9. As a remedy for the alleged *Brady* violation, Defendant wishes to reopen the suppression hearing. Because, while Defendant was able to cross-examine the affiant, Agent Blanc, during the suppression hearing, he did not *impeach* Agent Blanc using TFO Blohm's testimony, "that Mr. Bradley had been lost or they stopped surveilling him for a period of time." ECF No. 119 at PageID #: 1901, lines 22-23.

The Government expresses uncertainty about whether *Brady* applies to suppression hearings, but, nevertheless, responds that the surveillance log was not suppressed. ECF No. 114 at PageID #: 1858. Defendant concedes, the surveillance log was not suppressed. The Government argues Defendant had access to the surveillance log prior to the suppression hearing and trial. ECF No. 119 at PageID #: 1909, line 17. The Government also contends that the testimony of TFO Blohm is not contrary to Agent Blanc's testimony, so her testimony is not impeachment evidence that supports a *Brady* violation. ECF No. 114 at PageID #: 1861.

The Sixth Circuit has not yet ruled on whether *Brady* protections are applicable to suppression hearings. *United States v. Taylor*, 471 F. App'x 499, 520 (6th Cir. 2012). The Sixth Circuit has remarked, however, "'it is hardly clear that the *Brady* line of cases applies to suppression hearings. Suppression hearings do not determine a defendant's guilt or punishment, yet *Brady* rests on the idea that due process is violated when the withheld evidence is 'material either to guilt or punishment.''" *United States v. Bullock*, 130 F. App'x 706, 723 (6th Cir. 2005) (quoting *United States v. Bowie*, 198 F.3d 905, 912 (D.C. Cir. 1999)). The Sixth Circuit addressed a *Brady* issue in *Taylor* that occurred during a suppression hearing and approached it by "assuming without deciding that *Brady* applies to suppression hearings." *Taylor*, 471 F.

App'x at 520. Following the Sixth Circuit's lead, the Court applies *Brady*'s protections to the suppression hearing underlying Defendant's instant motion.

"The elements of a *Brady* violation are: (1) the government suppressed evidence, (2) the suppressed evidence is favorable to the defendant, and (3) the evidence is material (*i.e.*, the defendant was prejudiced as a result of the suppression)." *United States v. Todd*, 825 F. App'x 313, 319 (6th Cir. 2020) (citing *Strickler v. Greene*, 527 U.S. 263, 281-282 (1999)).

**A. The Government did not Suppress the Evidence at Issue**

"'*Brady* is concerned only with cases in which the government possesses information which the defendant does not.' Further, there is no *Brady* violation if the defendant knew or should have known the essential facts permitting him to take advantage of the information in question, or if the information was available to him from another source." *United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007) (citing *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000)).

Defendant purports that he "was never told that there was a break in the surveillance on January 31, 2021." ECF No. 115 at PageID #: 1863. Specifically, Defendant raises that TFO Blohm's trial testimony, that Defendant was not under surveillance for a period of time when the surveillance team lost sight of him around 6:30 p.m., was not disclosed to him. ECF No. 109 at PageID #: 1810-1811.

At the Hearing, the Government confirmed, without objection from Defendant, that, on March 4, 2022, it disclosed the surveillance log containing the gap between 6:30 p.m. and 9:00 p.m. to defense counsel. ECF No. 119 at PageID #: 1904, lines 16-24. At that time, a different federal public defender was representing Defendant. At the Hearing, his current defender, who is part of the same Federal Defender's office, acknowledged that the log had been turned over to

his office and that he had access to the log before the suppression hearing and trial. Against this backdrop, the Court fails to see how the Government suppressed the information. Defendant had access to the log before the suppression hearing. In fact, he submitted that very log as an exhibit at trial.[3] The log contains the gap in time and names the task force officer whom created the log—Heather Blohm.

Defendant asserts that he needed the trial testimony of TFO Blohm to fully appreciate the gap in the log, because Defendant did not know that TFO Blohm was going to say there was a gap in surveillance until she testified. ECF No. 119 at PageID #: 1894, lines 3-5. Therefore, the Court should reopen the suppression hearing so he can use that testimony to impeach the affiant, Agent Blanc. The Court finds this argument unavailing.

Defendant had access, before the suppression hearing and before trial, to the surveillance log at issue and had access to the essential facts permitting him to take full litigative advantage of the information it contained or that was absent from the log. The defense's failure to apprehend what it alleges now is not evidence of a *Brady* violation. The Government did not suppress the surveillance log or inhibit Defendant's use of it or inferences therefrom. Rather, Defendant failed to use what he was given to (what he now claims) is his full litigation advantage.[4]

---

[3] Defendant admitted this at the Hearing. *See* ECF No. 119 at PageID #: 1912, lines 18-19.

[4] Government's counsel summarized this point during the Hearing: "So, first of all, to argue that he didn't have evidence of that gap is disingenuous based on the fact that he had the surveillance log. So he had the surveillance log when he was questioning Agent Blanc, and he didn't question Agent Blanc. He didn't raise this as an issue, like 'Why isn't it in the surveillance log,' during the suppression hearing." ECF No. 119 at PageID #: 1905, lines 18-24.

**B. Defendant Does Not Present Impeachment Evidence that could be Favorable**

"Favorable evidence includes both exculpatory and impeachment evidence." *Kelley v. Burton*, No. 22-1135, 2023 WL 2755654 (6th Cir. Apr. 3, 2023) (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985)). Defendant argues TFO Blohm's testimony regarding the gap was impeachment evidence. ECF No. 109 at PageID #: 1804. The Government contends that the testimony of Agent Blanc and TFO Blohm was not inconsistent, so no impeachment evidence exists. ECF No. 114 at PageID #: 1861.

In Agent Blanc's affidavit for the search warrant of the house at Nicholas Place, Agent Blanc wrote that Defendant left the address at John Court and arrived at Nicholas Place at about 6:45 p.m. ECF No. 36-1 at PageID #: 198. The surveillance log at the forefront of this evidentiary challenge has nothing listed from 6:30 p.m. to 9:00 p.m. At trial, during her cross-examination, TFO Blohm testified about the gap in the log between 6:30 p.m. and 9:00 p.m., stating "the reason that they put that he was traveling south and not putting that he arrived at a residence is because they lost the vehicle." ECF No. 105 at PageID #: 1223, lines 21-24. Defense counsel began, "but then they…" and TFO Blohm finished the sentence explaining "refound the vehicle back at Nicholas Place." ECF No. 105 at PageID #: 1224-25, lines 25-1. Defense counsel continued cross examination:

> Q: Okay. So you found the – but it doesn't say when you started looking, or it didn't say when you found the vehicle back at Nicholas Place?
> A: Can I see?
> Q: Well, yes. So at 1830, which would be, is that 6:30?
> A: 1830 is 6:30, yes.
> Q: Okay. And so 2100 is 9:00, correct?
> A: Yes.
> Q: It doesn't say that Bradley arrives at Nicholas Place, it says that he's leaving Nicholas Place.
> A: That's probably when they found his vehicle.
> Q: Well, you are speculating now, right?
> A: Well, you are asking me for my opinion. That's my opinion.

> Q: No, I didn't ask for your opinion, I asked – I said – my question was, I said, Bradley leaves Nicholas Place at that time, correct?
> A: Yes
> Q: Maybe they just never recorded when they started observing him again at Nicholas Place, correct?
> A: Generally, as somebody who writes the reports, we do record that.
> Q: Okay. But it never said that "surveillance was interrupted" or "we lost surveillance," or anything like that in this report, correct?
> A: Correct.
> Q: So it's not put in the report?
> A: Correct.
> Q: So there's nothing here to say that surveillance got interrupted for a period of a couple of hours?
> A: Correct
> Q: But obviously Nicholas Place is one of the places that you would have went to look for Mr. Bradley again, correct?
> A: Correct.
> …
> Q: So it's possible that whoever was conducting surveillance at Nicholas Place arrived there before 9:00?
> A: Yes.

ECF No. 105 at PageID #: 1224-1225, lines 2-18.

TFO Blohm testified that there was a gap in the log and that officers lost surveillance of Defendant for a period of time. TFO Blohm could not testify with certainty when surveillance began again. She admitted that whomever was conducting surveillance at Nicholas Place arrived before 9:00 p.m., but she does not provide a definitive answer as to when surveillance restarted. Agent Blanc's testimony fills in that gap. In the affidavit for the search warrant and during his testimony at trial, Agent Blanc consistently relayed the same information: Defendant arrived at Nicholas Place at 6:45 p.m. *See* ECF No. 36-1 at PageID #: 198; ECF No. 106 at PageID #: 1518, line 14. Defendant argues Agent Blanc's testimony during the suppression hearing contradicts TFO Blohm's trial testimony because Agent Blanc testified that Defendant was under surveillance at all times and TFO Blohm indicated the surveillance team lost Defendant at some point for an unspecified amount of time. ECF No. 49 at PageID #: 278-279.

During the Hearing, Agent Volpe's testimony was also referenced. At trial, during cross-examination, defense counsel asked what a gap in time in a log could signify, and Agent Volpe replied, "So if there's a gap in time, it's either, one, we've lost the guy during surveillance, our target during surveillance, or there's just nothing happening." ECF No. 106 at PageID #: 1488, lines 13-15. Tellingly, the question from the defense shows an awareness of what Defendant now claims was withheld—a possible gap in surveillance. Finally, as Government's counsel explained:

> Agent Volpe's testimony was brought up regarding the log. And he testifies about the log as well, but he specifically states in that log, number one, "There's constant surveillance," and number two, "We may have lost him in traffic at any given point, but we knew where he was most of the day. And if it was a long period of time or a significant gap, that would have been in the surveillance log." And that's in document 106, page 78 and 79. So you have three agents all testifying to the same thing, different perspectives. And different reasons for their testimony, because Agent Blanc is testifying to a specific fact; Agent Blohm is testifying to the log; and Agent Volpe was actually testifying to the surveillance that day.

ECF No. 119 at PageID #: 1907, lines 3-17.

In summary, the Court finds that even if there were an inconsistency, Defendant had all litigative tools guaranteed by *Brady*—discovery and access to witnesses on direct and cross examination—to explore the issue at the suppression hearing and trial.[5] As importantly, Defendant's instant motion has not presented evidence or an issue that undermines the denial of the motion to suppress.

---

[5] Again, Government's counsel succinctly summarized what the record reveals, "So they're not inconsistent they're just different topics almost. She's testifying to the log, Agent Blanc is testifying to 6:45 he's at the house." ECF No. 119 at PageID #: 1906, lines 11-13.

**1. *Franks* Hearing**

At base, Defendant's instant motion makes a *Franks* challenge. At the Hearing Defendant explained his argument.

> Agent Blanc basically made up the fact that he arrived back at Nicholas Place at 6:45 to fill in that gap, when in reality they weren't even surveilling him at 6:45, but he knows he needs a nexus to Nicholas Place if he wants to search Nicholas Place, and that's why, thinking that it would take about 15 minutes after leaving Fulton Street to arrive at Nicholas Place, he just penciled in 6:45.

ECF No. 119 at PageID #: 1898, lines 13-20. The Court followed up and asked, "but what you're telling me now is you think Agent Blanc testified falsely, and did it intentionally to fill in a gap invidiously." ECF No. 119 at PageID #: 1899, lines 18-20. Defense counsel replied, "I think he first did it when he swore out the search warrant affidavit." ECF No. 119 at PageID #: 1899, lines 21-22. While Defense counsel does not believe a *Franks* hearing is required, the very issue he raises requires evaluating whether a *Franks* hearing is necessary. ECF No. 119 at PageID #: 1898, line 11.

When a defendant alleges a statement in a search warrant affidavit is false, he is entitled to an evidentiary hearing if he (1) makes a substantial preliminary showing that the affiant knowingly, intentionally, or with reckless disregard for the truth included the false statement or omitted information, and (2) establishes that the false statement or omission is material to a finding of probable cause. *United States v. Schumacher*, 611 F. App'x 337, (6th Cir. 2015) (citing *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)). "A 'defendant who challenges the veracity of statements made in an affidavit that formed the basis for a warrant has a heavy burden,' and '*Franks* specifically states that allegations of negligence or innocent mistake are insufficient.'" *United States v. Bucio-Cabrales*, 635 F. App'x 324, 331 (6th Cir. 2016) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990); *United States v. Palmer*, 27 Fed.

Appx. 343, 350 (6th Cir. 2001)). A defendant must "point to specific false statements and then accompany his allegations with an offer of proof." *United States v. Green*, 572 F. App'x 438, 442 (6th Cir. 2014). An attacker's challenge "must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Franks*, 438 U.S. at 171-72.

Defendant claims Officer Blanc, the affiant, intentionally lied in the affidavit for the search warrant. In support of his position, however, Defendant offers only speculation and his own conclusions. Defendant's challenge presents more as a desire to reopen the suppression hearing to allow him an opportunity to attempt to impeach Agent Blanc. That opportunity has passed. Defendant has not provided a basis for a *Franks* challenge. Additionally, as earlier indicated, the possible impeachment would not change the Court's ruling denying the motion to suppress.

**C. Defendant has not proven the Evidence at issue is Material**

Evidence is material and, hence, prejudicial, if there is a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed. *Gabrion v. United States*, 43 F.4th 569, 582 (6th Cir. 2022).

The testimony given by TFO Blohm does not undermine the testimony given by Agent Blanc at the suppression hearing or the sworn statements made by Agent Blanc in the affidavit for the search warrant. Surveillance efforts can continue even if a suspect is lost for a small period of time. Trial testimony from Agent Volpe supports this assertion. Agent Volpe provided the following testimony during cross examination:

> Q: Okay. All right. Now, based upon your memory that day, Mr. Bradley was under constant surveillance, correct?
> A: I mean, based off that log, yes. Whether or not we lost him in traffic at any given point, it could have been possible, but I would say for the most part, we knew where Mr. Bradley was at that day.
> Q: Right. Do you have any memory of losing him in traffic?

> A: I mean, it's possible. I mean—
> Q: Okay. But if you lost—
> A: It's possible to lose somebody in traffic and then regain them in traffic based off their patterns of life that we've established prior to that day.
> Q: And that would be sort of a temporary loss of surveillance, right?
> A: Yes, correct.
> Q: Maybe something that you wouldn't notate?
> A: I mean, if it was a significant gap in time, we probably would have notated that, but…
> Q: Yeah. So if it was like a two and a half hour gap in time, you would have notated that?
> A: Probably.
> Q: Like you lost—you lost the target for quite a while then.
> A: Right.
> Q: You're not even conducting surveillance at that point, right?
> A: Well, yes. I mean, we go out looking and knowing places to find him again and attempt to relocate a person.
> Q: And you would primarily go back to Nicholas Place and John Court because those were the places he was seen earlier, right?
> A: And Fulton, yeah.
> Q: And Fulton, right. But you don't have any memory of him being out of surveillance for any significant period of time?
> A: No sir.

ECF No. 106 at PageID #: 1461-1462, lines 11-22. Testimony from Agent Volpe reveals the surveillance team may have lost Defendant in traffic and provides that if the Defendant had been lost for a significant amount of time, there probably would have been a notation. The Court finds the statements of Agent Blanc at the suppression hearing and in the search warrant affidavit to be credible. *See United States v. Blair*, 524 F.3d 740, 749 (6th Cir. 2008) (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)) ("due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses").

Therefore, the result of the suppression hearing would not have been different had the alleged impeachment evidence been introduced. Accordingly, the Court finds this evidence is not material.

## IV. Conclusion

The Court finds that Defendant has not shown that the alleged impeachment evidence exists. Even if Defendant had established the alleged impeachment evidence, the Court finds that it would not have altered the outcome of the suppression hearing held on February 16, 2023. The Court reiterates that Defendant had been provided all to which he was entitled to prior to the suppression hearing and trial. The fact he is now dissatisfied with the results does not constitute a breach of rules, rights, or policies. For the reasons stated above, the Court denies Defendant's Motion for a New Trial and Motion to Reopen Suppression Hearing (ECF No. 109).

IT IS SO ORDERED.

May 23, 2024
Date

*/s/ Benita Y. Pearson*
Benita Y. Pearson
United States District Judge